IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| | ) CIVIL ACTION NO. 2:23CV3010 |
| Plaintiff, | ) ) COMPLAINT |
| v. | ) ) JURY TRIAL DEMANDED |
| UNITED HEALTHCARE SERVICES, INC. | ) ) |
| Defendant. | ) ) ) ) ) |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, to correct unlawful employment practices based on religion and provide appropriate relief to Charging Party Amanda Stone. As alleged with greater particularity below, Defendant violated Title VII when it discriminated against Stone by refusing to accommodate her sincerely held religious belief and terminated her employment.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the state of Ohio and within the jurisdiction of the United States District Court for the Southern District of Ohio.

1

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3)..

4. At all relevant times, Defendant United Healthcare (United), a Minnesota corporation, has continuously been doing business in the State of Ohio and the City of Dublin and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant has been a covered entity under Title VII.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Stone filed a charge with the Commission alleging violations of Title VII by Defendant.

8. On March 21, 2023, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On June 19, 2023, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

11. Since at least October 2021, Defendant has engaged in unlawful employment practices in violation of sections 701(j) and 703(a) of Title VII, 42 U.S.C. §§ 2000e(j) and 2000e-2(a). The unlawful practices include but are not limited to, the following:

12. Stone began working for Defendant as a Community Healthcare Worker (CHW) in March 2014.

13. In February 2016, Stone was promoted to a Supervisor of Clinical Administration.

14. Stone is a Christian who maintains sincerely held religious beliefs that human life is sacred; human life is a gift from God; and abortion is gravely wrong and contrary to the commandments and teachings of the Christian Bible.

15. During 2016, Stone suffered from multiple miscarriages and gave birth to a stillborn child, moving Stone to deep devotion to such beliefs.

16. In her position as a Supervisor of Clinical Administration, Stone managed a team of CHWs.

17. In her position as a Supervisor of Clinical Administration, Stone performed most of her job duties from home.

18. In 2018, Defendant transitioned Stone to full-time telework due to budget cuts.

19. This transition eliminated any jobs duties that required Stone to meet face-to-face with anyone or to enter Defendant's facilities.

20. In 2019, Stone attended a voluntary mentorship opportunity in person with her supervisor, and that was the last time she traveled outside of her home for work.

21. In October 2021, Defendant implemented a COVID-19 vaccination policy that required employees to be vaccinated if they were providing in-person care; meeting face-to-face

3

with customers, members, providers, or suppliers; or entering Defendant's facilities.

22. Defendant provided additional information stating that the policy did not apply to full-time telecommuters and people who did not work in a facility or visit patients, members, providers, clients, customers, or suppliers in a physical setting.

23. Despite the fact that Stone was a full-time telecommuter, Stone received notifications directing her to receive the COVID-19 vaccination.

24. As a result and extension of her sincerely held religious beliefs described above, Stone is unable, in good conscience, to receive certain vaccines, including but not limited to COVID-19 vaccines, that were developed or tested using cell lines derived from aborted fetuses.

25. Upon receiving the notifications directing her to receive the COVID-19 vaccination, Stone spoke to her supervisor and Defendant's Human Capital partner about her telecommuter status and the fact that her religious beliefs prevented her from getting the vaccine; they told her she had to file a religious accommodation request asking for a vaccine exemption.

26. Stone's supervisor also suggested that she apply for other telecommuter positions.

27. Stone had already been applying for other telecommuter positions since she obtained a new certification and became qualified for higher-paying remote jobs in mid-2021, and she reminded her supervisor of the same.

28. At that time, Stone was still being considered for at least two of the other telecommuter positions she had applied for, and she continued to apply for other telecommuter positions thereafter.

29. On October 6, 2021, Stone submitted a religious accommodation request, in which she sought an exemption from receiving a COVID-19 vaccine on the grounds that COVID-19 vaccines were developed and/or tested using cell lines derived from aborted fetuses

and receiving such a vaccine would violate Stone's sincerely held religious beliefs, including her beliefs regarding the sanctity of human life. She was required to and did certify that her religious beliefs were sincere when she submitted the accommodation request.

30. Defendant did not contact Stone about her request or ask for any additional information while her request was pending.

31. On October 26, 2021, Defendant sent Stone written notice that her religious accommodation was denied and directed her to get the COVID-19 vaccine.

32. After receiving the denial, Stone asked her supervisor how to appeal the decision. Her supervisor told her there was no way to appeal but that Stone could submit another religious accommodation request.

33. On November 11, Stone submitted another religious accommodation request seeking a vaccination exemption and again certified that her religious beliefs were sincere. Stone again stated that receiving the vaccine would violate her Christian beliefs, citing and quoting passages from the Christian Bible to explain her beliefs that human life is sacred, that abortion is gravely wrong, that her body is a temple where God's Spirit dwells, and that receiving a vaccine developed and/or tested using cell lines derived from aborted fetuses would violate those beliefs.

34. Defendant again did not contact Stone about her request or ask for any additional information while her request was pending.

35. On November 24, Defendant again denied Stone's request and again directed her to get the COVID-19 vaccine.

36. Defendant failed to provide Stone with an explanation as to why her religious accommodation requests were denied.

37. Stone did not get the COVID-19 vaccine because to do so would violate her sincerely held religious beliefs.

38. On November 30, Defendant sent Stone an email informing her that she was being placed on administrative leave because she had failed to comply with the COVID-19 vaccination policy.

39. Defendant informed Stone that the first two days of her administrative leave would be paid and then would be followed by 30 days of unpaid administrative leave.

40. Defendant further informed Stone that if she did not comply with the vaccination policy during that time, her employment may be terminated.

41. Defendant then placed Stone on 30 days of unpaid administrative leave and locked her out of all company systems.

42. On January 2, 2022, Stone had not received the COVID-19 vaccine, and Defendant fired her as it said it would.

43. Defendant engaged in unlawful employment practices in violation of sections 701(j) and 703(a) of Title VII, 42 U.S.C. §§ 2000e(j) and 2000e-2(a). Specifically, Defendant failed or refused to provide Stone with a reasonable accommodation of her sincerely held religious beliefs.

44. Stone is a Christian who believes the use of vaccines developed and/or tested using cell lines derived from aborted fetuses violates the commandments and teachings of her religion.

45. Defendant's requirement that Stone receive the COVID-19 vaccination conflicted with Stone's sincerely held religious beliefs.

46. Defendant knew that Stone's religious beliefs conflicted with its requirement that

she receive the COVID-19 vaccine.

47. Defendant took adverse employment action against Stone because she failed to comply with its requirement that she receive the vaccine.

48. The effect of the practices complained of in paragraphs 12-47 above has been to deprive Stone of equal employment opportunities and otherwise adversely affect her status as an employee because of her religious beliefs.

49. The unlawful employment practices complained of in paragraphs 12-47 above were and are intentional.

50. The unlawful employment practices complained of in paragraphs 12-47 above were done with malice or with reckless indifference to the federally protected rights of Stone.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from discriminating against persons on the basis of their religion, including by failing to accommodate such persons' sincerely held religious beliefs.

B. Order Defendant to promulgate and carry out policies, practices, and programs which provide equal employment opportunities to persons protected by Title VII and that eradicate the effects of its past and present unlawful employment practices, including discrimination and retaliation.

C. Order Defendant to make whole Stone by providing her appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to

reinstatement and/or front pay.

  D. Order Defendant to make whole Stone by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above in amounts to be determined at trial.

  E. Order Defendant to make whole Stone by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial.

  F. Order Defendant to pay Stone punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

  G. Grant such further relief as the court deems necessary and proper in the public interest.

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

       Respectfully submitted,

       U.S. EQUAL EMPLOYMENT OPPORTUNITY
       COMMISSION
       Washington, D.C.

       GWENDOLYN Y. REAMS
       Acting General Counsel

       DEBRA M. LAWRENCE
       Regional Attorney
       Philadelphia District Office

       KATE NORTHRUP
       Assistant Regional Attorney

s/ Jessi Isenhart
JESSI ISENHART
Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
jessi.isenhart@eeoc.gov
Phone: 216-306-1121
PA Bar No. 206504