IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | Civil Action No. 2:23-cv-3010 |
| | ) | |
| Plaintiff, | ) | Judge Michael H. Watson |
| v. | ) | |
| | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| UNITED HEALTHCARE SERVICES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DEFENSE EXPERT AND STRIKE EXPERT REPORT AND TESTIMONY**

Defendant United Healthcare Services ("UHC" or "Defendant") submits its Opposition to Plaintiff's Motion to Exclude Defense Expert and Strike Expert Report and Testimony:

## INTRODUCTION

Plaintiff's motion to exclude the testimony of Dr. Michael Bolaris should be denied. It is not a true *Daubert* motion, but instead a merits-driven effort to exclude relevant, helpful expert testimony with which the EEOC simply disagrees. At its core, the motion seeks to prevent the jury from hearing the scientific, medical, and operational context necessary to understand UHC's actions during the unprecedented public health crisis of the COVID-19 global pandemic.

Dr. Bolaris' opinions fall squarely within the type of expert testimony contemplated by Rule 702: they will assist the trier of fact in understanding matters outside the common knowledge and address, among other things, the operational realities of implementing a vaccination policy in a healthcare setting during the height of the COVID-19 pandemic. His analysis of the health and safety risks and operational burdens associated with accommodating unvaccinated employees in that setting is directly relevant to UHC's defenses and involves specialized knowledge of healthcare operations, infection control, and workforce management that a lay jury does not have.

Dr. Bolaris' opinions also provide useful context regarding the regulatory and public health landscape in 2021, including federal and state guidance and mandates affecting healthcare employers. Explaining how these directives shaped employer decision-making during a rapidly evolving public health emergency is quintessential expert testimony that aids the jury in understanding the environment in which UHC acted. His discussion of the widespread scientific information—and factual misinformation—surrounding vaccines during the pandemic provides relevant context for evaluating issues in dispute, including Amanda Stone's claimed objections to vaccination. Expert explanation of that landscape helps the jury distinguish between scientifically established facts and commonly circulated misconceptions that played a role in this case.

Rather than properly focusing on the admissibility of this testimony under Rule 702, the EEOC instead attempts to argue the merits of its claims and impermissibly use this motion to argue its opposition to UHC's motion for summary judgment. This motion is not the proper vehicle to litigate factual disputes or expand the EEOC's page limits for its summary judgment briefing. Nor is it a substitute for presenting contrary expert evidence. The EEOC did not retain a rebuttal expert, and now seeks to exclude UHC's expert based solely on attorney argument.

The EEOC's criticisms—many of which lack citation to any authority—amount to lay disagreements with Dr. Bolaris' conclusions, attorney interpretation of evidence, or counsel's framing of scientific issues. Those are classic issues of weight and credibility to be tested through cross-examination; they are not grounds for exclusion. The EEOC's lay disagreement with a qualified physician's opinions does not render those opinions *inadmissible*.

Finally, the relief the EEOC seeks is extraordinary. Striking an expert in its entirety is a drastic remedy reserved for testimony that is irrelevant or fundamentally unreliable. Dr. Bolaris offers relevant, experience-based opinions grounded in scientific literature, public health guidance, and his professional expertise. At most, the EEOC raises points for cross-examination—not exclusion.  For all of these reasons, the EEOC's motion should be denied in its entirety.

## FACTUAL BACKGROUND

UHC retained Dr. Michael Bolaris, M.D., a physician with specialized training and experience in infectious diseases, public health, and healthcare operations, to provide analysis regarding the COVID-19 pandemic, vaccine-related scientific issues, and the healthcare environment in 2021. Dr. Bolaris holds a medical degree and is board certified in infectious diseases, internal medicine, and pediatrics. ECF 79-9, Ex. to Strike Mot., PAGEID# 2728; ECF 79-1, Strike Mot. Ex., PAGEID# 1976. He also has formal training in molecular and cellular biology. *Id.*

Dr. Bolaris serves as an Associate Clinical Professor at the David Geffen School of Medicine at UCLA and has held that role since 2020. ECF 79-9, Strike Mot. Ex., PAGEID# 2729; ECF 79-1, Strike Mot. Ex., PAGEID# 1976. He also holds multiple senior leadership roles within a large public healthcare system, including Chief Quality Officer, Chief Medical Informatics Officer, Chief of Infectious Disease, Chair of Pediatrics, and Medical Director of Infection Control at Rancho Los Amigos National Rehabilitation Center. *Id.* at PAGEID# 1976-; ECF 79-9, Strike Mot. Ex., PAGEID# 2729. In those roles, Dr. Bolaris is responsible for infection prevention, patient safety, clinical operations, and oversight of multidisciplinary teams, including infection prevention staff, physicians, and quality personnel. ECF 79-1, Strike Mot. Ex., PAGEID# 1976-77. His responsibilities include evaluating clinical data, implementing infection-control policies, treating patients, and managing healthcare operations in complex clinical environments. *Id.*

During the COVID-19 pandemic, Dr. Bolaris served as Medical Director of COVID-19 Response for the Los Angeles County Department of Health Services, one of the largest municipal healthcare systems in the United States. ECF 79-1, Strike Mot. Ex., PAGEID# 1976; ECF 79-9, Strike Mot. Ex., PAGEID# 2729. He was responsible for evaluating emerging scientific data, developing infection-control and treatment protocols, advising as a subject-matter expert on COVID-19 vaccines, and assisting with implementation of vaccination programs for both patients and healthcare workers. ECF 79-1, Strike Mot. Ex., PAGEID# 1977-78. He also participated in the development of countywide testing programs and the adaptation of electronic health systems to support pandemic response. *Id.* Dr. Bolaris' work during this period required continuous analysis of peer-reviewed scientific literature, public health guidance, and real-world data regarding SARS-CoV-2 transmission, and vaccine development, safety, and effectiveness. *Id.* His responsibilities included translating that information into operational policies for healthcare settings, including

3

policies addressing workforce safety and patient care. *Id.*

Consistent with Rule 26(a) and the parties' agreed-upon schedule, Defendant timely disclosed its intent to rely on expert testimony and served Dr. Bolaris' report. *See* ECF 63, Order, PAGEID# 1916; ECF 79-1, Strike Mot. Ex., PAGEID# 1974-2000. The parties jointly sought extensions of expert deadlines with the understanding that both sides would retain experts, and Plaintiff was fully aware of Defendant's reliance on expert testimony. Dr. Bolaris' report was produced in accordance with those agreed deadlines. ECF 29, Joint Mot., PAGEID# 131-132.

Dr. Bolaris' expert report sets forth his qualifications, identifies the materials he reviewed, and explains the bases for his opinions. ECF 79-1, Strike Mot. Ex., PAGEID# 1976-78. The report includes a detailed overview of the COVID-19 pandemic, including the emergence and spread of SARS-CoV-2, transmission dynamics, and risks to vulnerable populations. *Id.* at 1977-78. It also describes conditions facing healthcare employers during the pandemic, including staffing shortages, delays in care, and increased patient acuity. *Id.* at 1978.

The report further addresses the development and deployment of COVID-19 vaccines, including their mechanisms of action, safety profile, and effectiveness in reducing infection, severe illness, hospitalization, and death. *Id.* at 1985-89. It also explains the role of vaccination in reducing transmission and mitigating operational strain in healthcare settings. *Id.* at 1989-91.

In forming his opinions, Dr. Bolaris reviewed deposition testimony, public health guidance, peer-reviewed literature, and other materials, which are cited throughout his report. *Id.* His analysis reflects the application of his education, training, and professional experience to interpret those materials in the context of healthcare delivery during the pandemic.

The report also addresses widely discussed issues during the pandemic, including vaccine-related factual misinformation and scientific questions concerning vaccine development. *Id.* at

4

1992-96. It explains the role of fetal cell lines in certain types of research for vaccines and distinguishes between testing, development processes, and final vaccine composition. *Id.*

The report then sets forth his opinions, which address topics such as SARS-CoV-2 transmission, vaccine effectiveness, comparative risks of infection versus vaccination, and the role of vaccination in healthcare environments during 2021. *Id.* at 1998-2000. Those opinions are based on his training, experience, and review of scientific and public health data.

Dr. Bolaris' report is based on his education, training, and professional experience, together with his review of scientific literature, public health guidance, and case-specific materials, and provides medical and scientific context concerning the COVID-19 pandemic and the information available to healthcare organizations in 2021.

**ARGUMENT**

**I.    THE EEOC'S OBJECTIONS GO TO WEIGHT, NOT ADMISSIBILITY**

The EEOC's motion fails for a fundamental reason: its criticisms do not identify any defect in admissibility under Rule 702. Instead, they amount to disagreements with Dr. Bolaris' conclusions, interpretations, and characterization of the evidence—issues that go to weight and credibility, not admissibility. *Benton v. Ford Motor Co.*, 492 F. Supp. 2d 874, 876–77 (S.D. Ohio 2007) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) (challenges to an expert's experience and conclusions "go to the weight, rather than the admissibility"). The Sixth Circuit, interpreting *Daubert*, has made clear that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate means of attacking expert testimony. *United States. v. Anderson*, 67 F.4th 755, 768 (6th Cir. 2023) quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Courts do not exclude expert testimony simply because the opposing party disputes the facts relied upon or disagrees with the expert's conclusions. *Id* (rejecting exclusion where objections "go to the accuracy of the

5

conclusions, not to the reliability of the testimony," (internal quotations and citation omitted) and affirming that such concerns are for cross-examination).

Here, the EEOC's objections fall squarely into that impermissible category. Its motion repeatedly alleges supposed factual inaccuracies or disputes regarding the record, takes issue with how Dr. Bolaris interprets scientific or medical information, and asserts that his purported discussion of Ms. Stone's beliefs is unfair or unfavorable (even though Dr. Bolaris *does not* opine on Ms. Stone's beliefs at all). *Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 486–87 (6th Cir. 2002) (disputes over expert's factual assumptions and interpretation of the record present issues for jury, not exclusion under *Daubert*).

None of these arguments impugn the reliability of Dr. Bolaris' methodology or his qualifications. *Benton*, 492 F. Supp. at 879 ("Daubert's test to determine reliability focuses on the capability of a methodology or theory to be tested, *see* 509 U.S. at 593, 113 S. Ct. 2786, and not necessarily on whether any given expert's conclusions have been tested."). At most, they raise questions about the weight a factfinder should assign to his testimony. *Id.*

The procedural posture underscores the point: in opposition to summary judgment, the EEOC is free to argue that Dr. Bolaris' opinions do not carry Defendant's burden on an affirmative defense or are otherwise unpersuasive. If any claims proceed to trial, the EEOC is likewise free to cross-examine Dr. Bolaris and attempt to persuade the jury to discount his opinions. Those are the proper avenues for challenging expert testimony. *Miami Valley Fair Hous. Ctr., Inc. v. Preferred Living Real Estate Invs.*, LLC, No. 15-2737, 2018 WL 4690790, at *16-17 (S.D. Ohio Sep. 28, 2018) (motion to strike expert's report denied). What the EEOC cannot do is transform those disagreements into a basis for wholesale exclusion, which would be particularly inappropriate here, where the EEOC chose not to retain a rebuttal expert during discovery. Having elected not

6

to present competing scientific or medical testimony, the EEOC now attempts to exclude Defendant's expert altogether based on attorney argument alone. Rule 702 does not permit that approach.

## II.     DR. BOLARIS IS HIGHLY QUALIFIED UNDER RULE 702

The EEOC recites the Rule 702 factors but makes little effort to meaningfully apply them to Dr. Bolaris. That failure is dispositive. The Sixth Circuit has repeatedly held that "Rule 702 should be broadly interpreted" and that the rejection of expert testimony is "the exception, rather than the rule." *Mactec, Inc. v. Bechtel Jacobs Co.*, 346 F. App'x 59, 77 (6th Cir. 2009); *United States v. LaVictor*, 848 F.3d 428, 442 (6th Cir. 2017) (quoting *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998). The EEOC's motion does not come close to meeting that demanding standard.

Federal Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (affirming denial of motion to exclude expert).

### A.     Dr. Bolaris Is Qualified and His Expertise Matches the Opinions He Offers.

Under Fed. R. Evid. 702, a witness may qualify as an expert by reason of his or her "knowledge, skill, expertise, training, or education[.]" *Jahn v. Equine Servs.*, PSC, 233 F.3d 382, 388 (6th Cir. 2000) quoting Fed. R. Evid. 702. As explained in his curriculum vitae and expert disclosures, Dr. Bolaris has the following qualifications:

- Board-certified physician in infectious diseases and internal medicine with formal training

7

in molecular and cellular biology—scientific disciplines directly related to infectious disease transmission and vaccine development. ECF 79-9, Strike Mot. Ex., PAGEID# 2728; ECF 79-1, Strike Mot. Ex., PAGEID#.

- Serves as an Associate Clinical Professor at UCLA's David Geffen School of Medicine and holds multiple senior leadership roles within a large public healthcare system, including Chief of Infectious Disease, Medical Director of Infection Control, and Chief Quality Officer, where he is responsible for infection prevention, clinical operations, and patient safety in a complex healthcare environment. ECF 79-1, Strike Mot. Ex., PAGEID# 1976-77; ECF 79-9, Strike Mot. Ex., PAGEID# 2729.

- Served as Medical Director of COVID-19 Response for the Los Angeles County Department of Health Services during the height of the pandemic where he evaluated emerging scientific data, developed infection-control protocols, advised as a subject-matter expert on vaccine safety and effectiveness, and participated in the implementation of large-scale vaccination programs. That experience reflects the application of scientific knowledge to real-time operational decision-making in the same public health environment at issue here. *Id.* 2729-31.

Dr. Bolaris is offered as an expert in healthcare operations, vaccine program implementation, and public health response—not as a theologian or commentator on religious beliefs. His qualifications directly align with the opinions he offers, including opinions regarding: (1) the development, safety, and effectiveness of COVID-19 vaccines; (2) the risks of SARS-CoV-2 transmission in healthcare settings; and (3) the role of vaccination policies within healthcare operations during the pandemic. ECF 79-1, Strike Mot. Ex., PAGEID# 1984-92, 1998-2000. These are the same types of issues he addressed in practice while leading pandemic response efforts.

Dr. Bolaris' experience also includes evaluating scientific literature and public health guidance during a period when widespread misinformation about COVID-19 vaccines circulated among both the public and healthcare workforce. *Id.* at 1992-95. His report reflects that experience by identifying and explaining scientific information regarding vaccine composition, safety, and development—including issues such as the use of fetal cell lines in research and testing. *Id.* As a result, his testimony provides useful context that may assist the trier of fact in understanding the scientific information available to healthcare providers in 2021 and distinguishing between

8

accurate and inaccurate claims about vaccines.

Under the governing standard, that is more than sufficient to demonstrate that Dr. Bolaris is qualified. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294 (6th Cir. 2007) (expert need only be qualified in a general field relevant to the subject matter). In fact, Dr. Bolaris' education, training, and experience comfortably qualify him to offer the opinions in his report, and his testimony is relevant because it advances the factfinder's understanding of the scientific and operational context in which UHC acted. Any disagreement with his conclusions goes to weight, not admissibility.

Rather than engage with Dr. Bolaris' credentials, the EEOC resorts to attorney argument—suggesting, for example, that his opinions could be "drummed up by anyone searching the Internet" or are somehow derived from "social media." ECF 79, Strike Mot., PAGEID# 1965-66. Those assertions ignore the record and his qualifications. The EEOC claims that certain facts are so elementary that a simple internet search would result in the same conclusion (e.g., which substances were developed using fetal cell lines). Yet in reality these issues are not so simple for a lay jury, and as Dr. Bolaris' expert report explains, online searches also reveal a trove of misinformation. If UHG had attempted to introduce scientific facts without support, the EEOC would naturally have challenged such statements as unsubstantiated. Instead, UHG has presented an accredited and experienced physician and researcher to assist the jury in understanding these facts. The EEOC cannot have it both ways.

The EEOC's sweeping attempt to exclude Dr. Bolaris' opinions regarding the safety and effectiveness of COVID-19 vaccines fails because it conflates what is relevant with what is the EEOC's preferred theory of the case. *See* ECF 79, Strike Mot. Ex., PAGEID# 1969-71. UHC is entitled to present its own defense, including evidence explaining the scientific and public health

9

considerations that informed its decisions during the pandemic—whether or not the EEOC chooses to advance contrary arguments (e.g., that Stone should have been permitted to work indefinitely under PPE or other measures). *Id.* at 1971. That the EEOC has elected not to pursue certain theories does not render expert testimony on those topics irrelevant or inadmissible. *Id*. *See Serio v. Univ. of Chicago Med.*, No. 16- 355, 2019 WL 13218166, at *2 (N.D. Ind. Sept. 27, 2019) (denying motion to exclude where "Defendant accuses her of incompetence and basing her opinions on insufficient facts and data," and where "[i]f true, then Defendant will be happy to have a chance at cross-examining her . . . . As with other witnesses, here too, Defendant will have ample opportunity to advance its theory of the case during cross-examination."). To the contrary, Dr. Bolaris' opinions provide context for the jury in evaluating UHC's decision-making and the operational and safety considerations underlying its policies. Moreover, vaccine safety is directly relevant to the factual record in this case: Ms. Stone herself repeatedly admitted that one of her primary objections to the COVID-19 vaccine was her belief that it was "experimental" and lacked sufficient testing and long-term data. ECF 81-2, Stone Dep. Tr., PAGEID# 2986, 2993-94. In light of that testimony, it is entirely appropriate—and helpful to the trier of fact—for a qualified infectious-disease expert to explain the scientific basis for vaccine development, safety, and effectiveness, including whether those beliefs are consistent with the medical and public health understanding at the time. The EEOC's effort to exclude this testimony would improperly deprive the jury of necessary context and unfairly prevent UHC from presenting its defense.

**B. Dr. Bolaris is Reliable and Relied on Sufficient Data and Methodology.**

Dr. Bolaris' opinions readily satisfy Rule 702's reliability requirements. The Sixth Circuit has recognized that expert testimony grounded in professional experience, record review, and the application of specialized knowledge constitutes a valid and reliable methodology—particularly for non-scientific or experience-based experts. *See Berry v. City of Detroit*, 25 F.3d 1342, 1349–

10

51 (6th Cir. 1994) (expert testimony based on experience, review of materials, and application of professional judgment is admissible where it assists the trier of fact); *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30  (Rule 702 requires only that the expert's opinion rest on a "reliable foundation," not that it be correct). "Testimony meets this threshold [of reliability] when an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Jahn*, 233 F.3d at 388 (internal quotations and citations omitted) (district court abused its discretion in finding plaintiff's experts' medical testimony inadmissible).

Here, Dr. Bolaris employed a well-established methodology: he conducted a comprehensive review of the case record, including deposition testimony and documentary evidence; evaluated publicly available scientific literature and public health guidance; and applied his extensive training and real-world experience in infectious disease, vaccine implementation, and healthcare operations. ECF 79-1, Strike Mot. Ex., PAGEID# 1977-78, 1985-91. This approach—combining record review with the application of specialized knowledge and professional judgment—is precisely the type of methodology courts in this Circuit have long accepted. *See Berry*, 25 F.3d at 1350–51.

The EEOC's contention that Dr. Bolaris' opinions are unreliable because they rely in part on publicly available information or general scientific knowledge reflects a misunderstanding of Rule 702. Experience-based experts are not required to rely exclusively on controlled studies or peer-reviewed publications. *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (rejecting argument that expert's opinion was unreliable for lack of empirical testing or peer-reviewed support, and holding Rule 702 does not require such evidence where the expert relies on experience and specialized knowledge). To the contrary, Rule 703 expressly permits experts to

11

rely on the types of information reasonably relied upon in their field, including professional experience and review of available data. *See Berry*, 25 F.3d at 1350 (experiential knowledge may form the basis of expert testimony); *Chernyak v. Bricker*, No. 11-449, 2012 WL 1940646, at *8 (S.D. Ohio May 29, 2012) (rejecting argument that expert doctor not competent to opine on the comments, tests and chart of another physician, noting that expert may rely on facts or data that "experts in the particular field would reasonably rely on"). Dr. Bolaris' reliance on medical literature, public health guidance, and his own professional experience during the COVID-19 pandemic is entirely consistent with how physicians and public health experts form opinions in real-world settings.

Nor does the EEOC identify any meaningful flaw in the data Dr. Bolaris considered. Its argument that certain studies should be disregarded because they involve contexts outside COVID-19 vaccine development (e.g., testing involving fetal cell lines in other products) finds no support in Rules 702 or 703 or any other controlling authority. The distinction the EEOC attempts to draw—between testing during product development and testing conducted more broadly—is not grounded in any recognized methodological principle. ECF 79, at 15. Rather, it is an argument about how the facts should be interpreted; not whether the methodology used is reliable.

The EEOC's suggestion that Dr. Bolaris relied on "social media" is likewise unsupported by the record and false. ECF 79, Strike Mot., PAGEID# 1966. His report reflects the opposite: it cites to peer-reviewed studies, governmental guidance, and established scientific sources, and explains how misinformation circulated during the pandemic and conflicted with the scientific consensus. ECF 79-1, Strike Mot. Ex., PAGEID# 1992-95. Moreover, Dr. Bolaris has direct professional experience addressing misinformation about vaccines as the Medical Director of COVID-19 Response for the Los Angeles County as well as his role as an infectious disease doctor.

ECF 79-2, Bolaris Dep. Tr. PAGEID# 2023-25, 2048, 2053; 2215, 2120. Unsupported speculation about the sources of his opinions does not establish unreliability.

To the extent the EEOC identifies minor factual disagreements or disputes with Dr. Bolaris' interpretation of the evidence, those critiques provide no basis for exclusion. The Sixth Circuit has instructed that challenges to the "accuracy of the conclusions" or alleged weaknesses in an expert's analysis go to weight, not admissibility. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530. Such issues are properly explored through cross-examination and the presentation of contrary evidence, not by excluding the testimony altogether. *Id.* That is especially true here, where the EEOC had the opportunity to extensively cross-examine Dr. Bolaris during his deposition and will have the opportunity to do so again at trial if any part of the case survives summary judgment.

Finally, while the EEOC attempts to discredit Dr. Bolaris, it simultaneously advances its own scientific assertions without citation to any authority, expert or otherwise. *See, e.g.*, ECF 79, Strike Mot., PAGEID# 1969. Rule 702 imposes reliability requirements on expert testimony—not on unsupported assertions made by counsel. The absence of any competing expert testimony or cited authority further underscores that the EEOC's challenge is not to methodology, but to substance.  The EEOC's motion boils down to this improper purpose: having failed timely to retain its own expert, it hopes to knock out Defendant's.

The EEOC's objections do not implicate admissibility and provide no basis for exclusion.

### I.        Dr. Bolaris Does Not Opine That Ms. Stones's Alleged Religious Beliefs Are Incorrect or Invalid.

The EEOC's motion repeatedly mischaracterizes Dr. Bolaris' report as improperly targeting Ms. Stone's religious beliefs.

First, Dr. Bolaris does not opine on whether Ms. Stone's beliefs constitute a sincere religious conflict with vaccination. That question is reserved for the Court or the jury. He likewise

13

does not opine on Christianity or any religious doctrine. Nor does Defendant challenge sincerity in its summary judgment motion. *See* ECF 81-1, Mot. Summ. J., PAGEID# 2815 n.2. His testimony is confined to medical, scientific, and public health issues, not religion.

Second, Dr. Bolaris does not suggest that religious objections to vaccination are inherently illegitimate or "social-media-fueled-hysteria." Notably, the EEOC asserts—without any citation to Dr. Bolaris' report or deposition—that he opined Ms. Stone's beliefs are "akin to social-media-fueled hoaxes, conspiracy theories, and fearmongering." ECF 79, Strike Mot., PAGEID# 1956, 1960-62. The absence of any citation is telling: Dr. Bolaris made no such statement about Ms. Stone's beliefs.

Instead, Dr. Bolaris offers measured opinions within his expertise regarding the medical and scientific development of COVID-19 vaccines and other products referenced by Ms. Stone. Those opinions provide helpful context to the jury on objective scientific facts, including the role of fetal cell lines in research and development. *McCormick v. Chi. Transit Auth.*, No. 23 C 1998, 2025 WL 2209864, at *5 (N.D. Ill. Aug. 4, 2025) (declining to exclude expert regarding how and to what extent fetal cell lines were used in the development and testing of the vaccine).

For example, it is a matter of scientific fact that COVID-19 vaccines do not contain fetal tissue. At the same time, it is also true that fetal cell lines have been used in testing or development of certain vaccines, as well as many other common medications and consumer products. ECF 79-1, Strike Mot. Ex., PAGEID# 2000. These scientific facts are not obvious to a lay jury. Clarifying what is objectively true and what is not is well within Dr. Bolaris' expertise and assists the trier of fact.

The EEOC nonetheless asserts that the "clear point" of Dr. Bolaris' report is to portray Ms. Stone's religious beliefs in an unfavorable light. ECF 79, Strike Mot., PAGEID# 1961. That

14

assertion is unsupported by the contents of the report. To the extent the EEOC disagrees with how evidence in Dr. Bolaris' report and testimony may be perceived by a trier of fact, that is a matter for cross-examination and argument, not exclusion. Dr. Bolaris is not "pass[ing] judgment" on Ms. Stone's beliefs (*id*. at 10); rather, he is explaining scientific facts within his expertise. It will be for the Court or jury to decide if Plaintiff can meet her burden to show a sincere religious conflict with the COVID vaccine.

The EEOC further misquotes Dr. Bolaris' testimony regarding his interactions with patients and employees about vaccination. The motion suggests that he "tried to convince" individuals to get vaccinated, implying advocacy beyond the scope of his expert analysis. ECF 79, Strike Mot., PAGEID# 1965. But a review of the cited testimony in Plaintiff's Motion shows that Dr. Bolaris did not testify that he improperly pressured or "convinced" individuals; rather, he explained that his role involved providing medical information in response to questions about vaccines and fetal cell lines to support informed consent. *See* ECF 79-2, Bolaris Dep.Tr., PAGEID# 2024-25, 2048, 2051-54, 2095-96. When read in full, the cited portions confirm that Dr. Bolaris was responding to a surge of questions during an unprecedented public health emergency and providing scientific explanations grounded in his training and experience. *See id.* 2095-963 (widespread public discussion and questions arising during the COVID-19 vaccine rollout).

Finally, the EEOC devotes substantial argument to Ms. Stone's "reproductive history" and its purported relationship to her vaccine objections. ECF 79, Strike Mot., PAGEID#1963. That discussion has no bearing on the admissibility of Dr. Bolaris' opinions whatsoever and instead raises merits-based arguments that may be addressed at summary judgment or trial. Simply put: this argument is not a proper basis for a *Daubert* motion directed at Dr. Bolaris.

In sum, Dr. Bolaris provides medical and scientific context that is squarely within his

15

expertise and properly assists the trier of fact.

## III.    DR. BOLARIS' OPINIONS REGARDING THE SAFETY OF COVID-19 VACCINES ARE ADMISSIBLE AND SUPPORTED BY HIS EXPERIENCE

The EEOC devotes several pages (beginning at ECF 79, Strike Mot. PAGEID# 1969) to arguing that Dr. Bolaris' opinions regarding the safety and effectiveness of COVID-19 vaccines are inadmissible. That argument mischaracterizes the purpose of his testimony and the governing legal standard.

### A.    Dr. Bolaris' Testimony Provides Relevant Context for UHC's Vaccine Policy and the Undue Hardship Analysis

Dr. Bolaris' opinions regarding vaccine safety and effectiveness are directly relevant to the issues in this case. As the EEOC acknowledges, the proper inquiry under *Groff* is whether Plaintiff's preferred accommodation of exemption from vaccination would have resulted in UHC incurring substantially increased costs in relation to the conduct of its business, taking into "account all relevant factors." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023); ECF 79, Strike Mot., PAGEID#1970-71.

That inquiry is informed by the broader context in which UHC adopted its vaccine policy, including the nature of the COVID-19 pandemic, the risks posed by the virus in healthcare settings, and the public health guidance and data available at the time. Dr. Bolaris' testimony provides important context on those issues. His opinions explain the scientific and public health information available in 2021 and help the trier of fact understand the environment in which UHC implemented its policy and evaluated requests for accommodations.

This type of testimony is relevant to understanding the environment in which UHC evaluated operational and safety considerations it identified at the time. It provides background that may assist the jury (and the Court at summary judgment) in evaluating how and why the policy was implemented in the broader public health landscape.

16

**B. His Opinions Are Grounded in Relevant, Real-World Experience.**

Dr. Bolaris' opinions are also supported by his professional experience. As the Medical Director of COVID-19 Response for the Los Angeles County Department of Health Services, he evaluated emerging data, advised on vaccine safety and effectiveness, and participated in the implementation of large-scale vaccination programs. ECF 79-1, Strike Mot. Ex., PAGEID#1976-77.

That experience mirrors the type of information healthcare employers across the country were evaluating when adopting vaccination policies. His testimony therefore provides context regarding the kinds of data and guidance that informed employer decision-making during the pandemic and the conclusions that reasonably could be drawn from that information at the time. His testimony is admissible to explain UHC's understanding of public health guidance and the information available to employers in 2021, regardless of how the EEOC now seeks to frame that guidance in hindsight.

The EEOC's argument is also inconsistent with case law, including its own cited authority. In *McCormick*, the Court permitted expert testimony regarding the prevalence and spread of COVID-19, the consistency of the employer's vaccination policy with CDC and OSHA guidance, and the safety risks associated with an employee's non-compliance with the policy. *McCormick*, 2025 WL 2209864, at *5. The Court concluded that such testimony was relevant to the employer's hardship-related arguments. *Id.* The Court also allowed testimony regarding the role of fetal cell lines in vaccine development and testing, finding it probative of whether the plaintiff's claimed objection was religious in nature or consistently applied. *Id.* That reasoning applies equally here.

While *McCormick* limited testimony that purported to evaluate the validity of religious beliefs, it allowed expert testimony addressing public health conditions, vaccine-related risks, and the factual basis of asserted objections. That is precisely the scope of Dr. Bolaris' testimony.

17

C.      The EEOC Seeks to Exclude Relevant Background and Context.

The EEOC seeks to exclude evidence explaining why UHC implemented its Vaccination Policy and the context in which that decision was made. Courts routinely permit parties to introduce evidence of the public health guidance, scientific understanding, and workplace considerations that informed employer decisions during the pandemic. *Henry v. S. Ohio Med. Ctr.*, 155 F.4th 620, 633 (6th Cir. 2025) (relying on testimony regarding COVID-era laboratory constraints and testing delays—reflecting real-world public health conditions and operational considerations faced by healthcare providers during the pandemic); *Wise v. Children's Hosp. Med. Ctr. of Akron*, No. 24-3674, 2025 WL 1392209, at *5 (6th Cir. May 14, 2025) (relying on evidence regarding fact that "the hospital's decision-making process was heavily influenced by the fluctuating recommendations of the scientific community, the changes in government rules and guidelines, and the development and availability of key resources"). *See also Maki v. Fed. Rsrv. Bank of Minneapolis*, 784 F. Supp. 3d 1191, 1206 (D. Minn. 2025) (denying motion to exclude expert where "[i]n developing its vaccination policy and in determining not to grant Mr. Maki's requested accommodation, the Bank accounted for a variety of scientific information regarding COVID-19, the disease's impact on its employees and operations, and the efficacy of vaccines or other measures in addressing these impacts" and where expert's "proffered testimony will assist the jury in understanding this information").

Dr. Bolaris' testimony provides that type of background. It helps explain what information was available at the time and how that information relates to the operational and safety considerations UHC faced. *Henry*, 155 F.4th at 632 ("employer is permitted to draw conclusions based on evidence and information that was available at the time."). This is classic expert context testimony permitted under Rule 702. The EEOC's motion therefore functions as an attempt to remove from the record the broader factual and scientific context in which UHC acted. That is not

18

a proper basis for exclusion.

### D. The Absence of Any Contrary Expert Confirms Admissibility.

Finally, the EEOC has not offered any expert to dispute Dr. Bolaris' opinions regarding vaccine safety or public health guidance. It does not identify any expert evidence suggesting that the prevailing guidance in 2021 showed vaccines were unsafe or ineffective. It offers no expert evidence to show that having an unvaccinated person in Ms. Stone's role during a global pandemic would not have risked spreading a potentially deadly disease. Instead, it relies solely on lay attorney argument. That approach underscores that its objections concern the weight of Dr. Bolaris' testimony, not its admissibility.

## IV. DR. BOLARIS' FACTS SECTION COMPLIES WITH RULE 26(A)(2)(B)(II)

The EEOC's attack on the background section of Dr. Bolaris' report rests on a fundamental mischaracterization of his report. The EEOC attempts to recast his recitation of record facts—prepared as part of his review of case materials—as if it were a series of expert opinions. It is not. The EEOC contends that Dr. Bolaris' discussion of the factual record "intrude[s] upon the jury's function to determine the facts." ECF 79, Strike Mot., PAGEID# 1972. That argument fails as a matter of law and reflects a misunderstanding of the Federal Rules and standard expert practice.

Dr. Bolaris' background section is not only permissible—it is required. Fed. R. Civ. P. 26(a)(2)(B)(ii) mandates that an expert disclose "the facts or data considered" in forming his opinions. The 2010 Committee Notes confirm that this obligation is broad, encompassing all materials "considered," not merely those ultimately relied upon. Fed. R. Civ. P. 26 Advisory Committee Notes. Consistent with that requirement, Dr. Bolaris summarized deposition testimony and other record evidence to identify the materials he reviewed and considered.

The EEOC's argument likewise ignores Fed. R. Evid. 703, which permits experts to base opinions on facts or data reviewed in preparation for their report. It is standard practice to

19

summarize those materials so that the basis of the expert's analysis is transparent. That is exactly what Dr. Bolaris did: the background section synthesizes the record he reviewed, with precise citations, to explain the foundations for his opinions.

Critically, those background paragraphs are not opinions. They do not resolve disputed facts, assess credibility, or draw legal conclusions. They simply reflect Dr. Bolaris' understanding of the record. His actual expert opinions are separately stated in the report (beginning in Section VI) and do not address the sincerity or religious nature of Ms. Stone's beliefs. ECF 79-1, Strike Mot. Ex., PAGEID# 1998-2000.

The EEOC's attempt to blur this distinction between factual background and opinion is improper. At most, the EEOC's objections reflect disagreement with Dr. Bolaris' characterization of certain facts, which is an issue for cross-examination, not exclusion. Experts must engage with the factual record to form opinions, and Rule 26 *requires* them to disclose that engagement. The EEOC's position would improperly penalize UHC and Dr. Bolaris for Dr. Bolaris' compliance with the Rules. Accordingly, there is no basis to exclude Dr. Bolaris as an expert based on the EEOC's misrepresentation of background facts in his report.

## CONCLUSION

For all of these reasons, the EEOC's motion to exclude Dr. Bolaris should be denied in its entirety. The EEOC has not identified any defect in his qualifications, methodology, or relevance; instead, it seeks the extraordinary remedy of exclusion based on disagreements that go, at most, to weight and credibility. Notably, the EEOC does not meaningfully address any lesser alternatives— such as limiting testimony—nor could it, because Dr. Bolaris' opinions fall squarely within the bounds of Rule 702. Exclusion is a drastic remedy reserved for truly unreliable or irrelevant expert testimony, and this case presents nothing of the sort. The motion should be denied.

20

DATE:  June 2, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Daniel Birnbaum*
    *Daniel Birnbaum*
    DBirnbaum@seyfarth.com
    Christopher J. DeGroff (*pro hac vice*)
    cdegroff@seyfarth.com
    Dawn Reddy Solowey (*pro hac vice*)
    dsolowey@seyfarth.com
    Jesse M. Coleman (*pro hac vice*)
    JMColeman@seyfarth.com
    Samantha L. Brooks (*pro hac vice*)
    sbrooks@seyfarth.com
    SEYFARTH SHAW LLP
    233 South Wacker Drive
    Suite 8000
    Chicago, Illinois  60606-6448
    Telephone:    (312) 460-5000
    Facsimile:    (312) 460-7000

    *Attorneys for Defendant*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Opposition to Plaintiff's

Motion to Exclude Defense Expert and Strike Expert Report and Testimony has been

electronically filed and served upon all counsel of record using the CM/ECF system on this the

2nd day of June, 2026.

> Jessi Isenhart, Trial Attorney
> Emily Datnoff, Trial Attorney
> Taylor Hilton, Trial Attorney
> U.S. Equal Employment Opportunity Commission
> Cleveland Field Office
> 1240 E. 9th Street, Suite 3001
> Cleveland, OH 44199
> jessi.isenhart@eeoc.gov
> emily.datnoff@eeoc.gov
> taylor.hilton@eeoc.gov
>
> *Attorneys for Plaintiff*

> /s/ Christopher J. DeGroff
> Christopher J. DeGroff

22